THE MISSOURI PACIFIC RAILWAY COMPANY v. WILLIAM
HACKETT.

1. CASE, *Followed.*   The case of *Street Rly. Co. v. Stone,* ante, p. 83, cited
   and followed.

2. RAILROAD COMPANY — *Failure to Erect Gates — Accident to Runaway
   Horses — Contributory Negligence.*  The city of Ottawa duly passed
   an ordinance requiring the Missouri Pacific Railway Company to
   maintain good and sufficient gates on Main street on each side of
   its track and within 30 feet therefrom, and to keep the same se-
   curely closed while its trains were crossing the street.  The company
   neglected to erect any gates.  Plaintiff's horses, without his fault, be-
   came frightened and ran along Main street against a moving freight
   train, then crossing the street on the defendant's railway, and were
   injured thereby.  *Held,* That the railroad company was negligent in
   failing to maintain the gates; that such negligence contributed to
   the plaintiff's injury; and that the plaintiff is entitled to recover the
   amount of damages the stipulation of the parties in this case fixes
   as the measure of his recovery.

*Error from Franklin District Court.*

WILLIAM HACKETT brought suit against the *Missouri Pa-
cific Railway Company,* before a justice of the peace of Frank-
lin county to recover damages for injuries sustained by a team
of horses and a wagon while running away on Main street, in
Ottawa.  The justice rendered judgment for the plaintiff.  The
defendant appealed to the district court, where the case was
tried by the court on an agreed statement of facts, which is as
follows:

"It is hereby stipulated and agreed between the parties to
this action that a trial by jury be waived in this case, and the
case be submitted to the court for determination, and that the
following facts shall be taken and considered by the court as
proven, and shall constitute all the evidence in said case:

"1.  That the Missouri Pacific Railway Company is now
and has been for 10 years last past a railway company exist-
ing under and by virtue of the law of Kansas, and is the
owner of a line of railway extending from Osawatomie, Kas.,
westerly to the west line of the state of Kansas, and running
through the city of Ottawa, in Franklin county, Kansas, and
was operating the same with its locomotive engines and trains

of cars on the 8th day of October, 1889, and that said railway crosses Main street at its intersection with First street, in said city of Ottawa, and that Ottawa is a city of the second class.

"2. On the 8th day of October, 1889, William Hackett, plaintiff, was the owner of a team of horses and a wagon; and on said day said team of horses were harnessed and hitched to said wagon on Main street in the city of Ottawa, Kansas, (Franklin county,) at a point about 100 feet south from the crossing of Main street with the Missouri Pacific Railway Company tracks; that said horses at said time being so harnessed and hitched to said wagon were then tied with halters, the halter of one of said horses being tied in a ring in the sidewalk on the east side of said street, and the halter of the other horse being tied in a ring in a cellar door which forms a part of said sidewalk, and which door was seven feet long from east to west and three feet wide from north to south, said ring being about the middle of said door next to the curb. The cellar door was attached to the sidewalk by means of two strap hinges, one about a foot from the east end of the door, and one about a foot from the west end of the door. The strap hinge at the east end was broken and the hinge at the west end was broken by the horses when they pulled back. Said horses were so tied to the ring in the sidewalk and cellar door by the person in charge of them about 10 o'clock A. M. of said day, and said driver went away and left them so fastened. About 2 o'clock P. M. of said day, while one of the defendant's freight trains was passing along said track and crossing Main street, the plaintiff's said horses became frightened by reason of another team of horses being backed against them, and by reason of such fright said horses of plaintiff's pulled back and the halter tied in the ring in the sidewalk broke, while the horse with its halter tied in the ring in the cellar door pulled the door off and out in the street, by backing the wagon two-thirds of the way across Main street, dragging the door after them. Then the halter strap slipped out of the ring in the door and left the door in the street. Then said horses ran north on Main street, and while so excited by such fright and in their fright ran against the moving freight train on defendant's track at a point about the middle of Main street where it crosses said railroad track; and that said horses were so badly frightened that when they came to the train they jumped against it, striking the car next to the caboose, and by reason of the collision between the

horses and said car the horses were thrown down and each was so badly injured that they were worthless and had to be killed, and that the wagon attached to said horses was also badly damaged; that said horses were not frightened by reason of the passage of defendant's engine and train of cars.

"3. That on the 10th day of December, 1886, the mayor and councilmen of the city of Ottawa passed an ordinance known as 'ordinance No. 105,' entitled 'An ordinance regulating the crossing of Main and Locust streets by railroads,' which ordinance is in words and figures following:

"'SECTION 1. It shall be the duty of each and every company or corporation owning or controlling or operating a line of railroad across Main and Locust streets in the city of Ottawa, Kas., to erect good and sufficient gates on said streets on each side of such railway track and within 30 feet therefrom, and to employ suitable persons to operate the same; such gates shall be kept open at all times except when trains of cars or engines are crossing said streets on said track, at which time such gates shall be securely closed: *Provided*, Such railway company shall not be required to operate such gate across Locust street except at such times and for such length of time as the mayor and council shall direct. The said gates shall be of such dimensions and so constructed as when closed to fence the said railroad across said streets. The said gates shall be constructed upon said streets as not to unnecessarily obstruct the same.

"'SEC. 2. Every railroad company or corporation which shall, on or after the first day of May, 1887, operate any line of railroad across Main and Locust streets in this city without having complied with the requirements of this ordinance shall, upon conviction thereof, be fined in any sum not exceeding $100; and any engineer, conductor or any other employé of such railway company or corporation who shall run or operate or assist in running or operating any train of cars or engines across Main and Locust streets in this city in violation of this ordinance shall, upon conviction thereof, be fined in any sum not exceeding $100.'

"This said ordinance was published in book form on the 10th day of May, 1887, and was in force at all times mentioned herein.

"4. On the said 8th day of October, 1889, the defendant was operating its said road across Main and Locust streets in the city of Ottawa, Kas., without first having erected and without maintaining good and sufficient gates across said

Main street on each side of said track and within 30 feet therefrom, as required by said ordinance.

"5. That the freight train on defendant's road which plaintiff's horses collided with at the time was not running to exceed four miles per hour; the train, being about to cross the track of the A. T. & S. F. railroad, had checked up and was about coming to a full stop, and did stop within about two rods from the point of said collision.

"6. It is agreed, if the plaintiff is entitled to recover on the foregoing facts, that his damages were the sum of $260. It is further agreed, that the person in charge of the team had that forenoon driven across the defendant's railroad track at the crossing of Main street, and knew that there were no gates on either side of the railroad track where it crosses Main street in the city of Ottawa."

On these facts the district court rendered judgment for the plaintiff. The defendant company comes to this court.

*W. A. Johnson*, for plaintiff in error.

*H. P. Welsh*, and *C. A. Smart*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: The contention that damages cannot be recovered for injuries received by a runaway team of horses coming in collision with an unlawful obstruction in the street has some support in the authorities cited in the brief for the plaintiff in error. We have recently considered this subject in the case of *Street Rly. Co. v. Stone*, ante, p. 83, and have followed what we deem to be the weight both of authority and of reason, and hold that the right to recover is not precluded by the fact that the team was frightened and beyond the control of any person. The decision in that case disposes of the question mainly argued in this. It remains only to consider whether the failure of the railroad company to erect a gate, as required by the ordinance of the city of Ottawa, was the proximate cause of the injury to the plaintiff's team and wagon. It is claimed that the plaintiff was negligent in leaving his team hitched to the sidewalk on Main street, and within about 100 feet from the railroad track, for four hours.

The agreed statement of facts shows that the team was not frightened by the passing train. In the absence of any other facts, we cannot hold that there is an affirmative showing of negligence on the part of the plaintiff. It appears that the horses were frightened by reason of another team being backed against them. This might have been negligently done by the person in charge of the other team. It might also have happened without any negligence on his part. We cannot assume negligence. It must be shown. We then have the case of a frightened team of horses, loose on Main street, in charge of no one. The defendant's train of cars was passing along the railroad track across Main street. The ordinance of the city required that, during the passage of trains, access to the track should be closed by a good and sufficient gate, not more than 30 feet from the track; that the gate should be of such dimensions and so constructed as to fence the railroad across the street. The railroad company had a right to operate its trains, but it rested under the duty of having a closed gate to prevent access to the track when it would be dangerous for teams to pass. It is contended that the team would have been injured even though the defendant had complied with the ordinance. We do not think this can be assumed. The ordinance requires gates for the purpose of a substantial obstruction to the passage of persons, teams, etc., not for the mere purpose of giving warning. If a flagman had been required merely to warn persons about to cross the track of danger, there might be great force in the contention that a failure to place one there could not have occasioned loss to the plaintiff.

It is true that, so far as notice and warning are concerned, the presence of a train of freight cars is more easily seen than a gate would have been, but we cannot presume that a collision with a substantial gate placed across the street would have utterly ruined the plaintiff's horses as did that with the moving cars, nor can we assume that the horses would have broken through a substantial gate and struck the cars with such force as to have still sustained the injuries they did in

fact receive.   The common observation of mankind shows that a collision by a runaway team of horses with a gate will ordinarily result in less injury than the plaintiff's team sustained in this instance, and less than would ordinarily be sustained by running headlong against a moving freight train. It was the duty of the railroad company to interpose a gate between its train of cars and the frightened team.   This it failed to do.   It violated a positive requirement of law made for the protection of the lives and property of the people using the street.   In this the company was culpably negligent. The injury to the plaintiff's property would not have happened in the manner it did happen if the defendant company had obeyed the law.   It is probable that the team would have sustained some injury if there had been a gate across the street, but we are not required to speculate as to how much that injury would have been.   We are relieved of all difficulty as to the measure of damages in this case by the agreement that the plaintiff is entitled to recover $260, if anything.   The judgment of the district court is affirmed.

All the Justices concurring.