CHARLES A. BACH, Appellant, v. IOWA CENTRAL RAILWAY COMPANY, Appellee.

Railroads: NEGLIGENCE: *Jury question.* In an action against a railway company for injuries occasioned by the derailment of an engine, evidence that the accident occurred at a cattle guard at the end of a switch, and was caused by the cattle

1 guard being low, and the timbers in it rotten, causing it to sink under weight of the engine, and the pilot to strike the guard rail and move the switch, is sufficient to require the submission of the case to the jury.

EVIDENCE: *Photographs of scene of accident.* Photographs of the

2 scene of the derailment of a railway train, taken just after the accident, are admissible in evidence in an action to recover for injuries sustained in the wreck.

SUBSEQUENT DERAILMENT. In an action for injuries sustained in the derailment of an engine, caused by the sinking of the

track under its weight, that another engine, after the acci-
dent, was run over the track, and was derailed in the same
way, is inadmissible in evidence, where the engines were not
alike, and the track was not in the same condition.

*Appeal from Marshall District Court.*—HON. G. W. BURN-
HAM, Judge.

### THURSDAY, OCTOBER 18, 1900.

ACTION by plaintiff, who is a railway fireman, for in-
juries received through the derailment of a train. The an-
swer was a general denial. Trial to a jury. Directed ver-
dict for defendant, and plaintiff appeals.—*Reversed.*

*Boardman & Boardman* for appellant.

*Binford & Snelling* for appellee.

DEEMER, J.—As defendant's motion to direct a verdict
was sustained, every fact favorable to plaintiff, and which
the evidence tends to prove, must be conceded. With this in
mind, we now proceed to a statement of the grounds of neg-
ligence, and of the evidence offered to sustain them. The
charge is that plaintiff received his injuries through the
derailment of a train, and that the negligence
causing the accident consisted in the maintenance of
a low cattle guard, the timbers of which were rotten
and unsafe; that on or near the cattle guard there was a
switch, and across the guard was a guard rail which was too
high; and that the train on which plaintiff was riding
was drawn by a heavy "mogul" engine, and that, while run-
ning at the rate of thirty miles an hour, the engine struck
this cattle guard in its defective and unsafe condition, caus-
ing it to sink, the pilot of the engine to strike the guard
rail, the switch to spring, and the engine to leave the track."
In support of these allegations plaintiff introduced evidence
tending to show that the accident occurred at a point on
defendant's track where there was a "doubling" switch; that

the cattle guard was at the point of the switch; that as soon as the engine struck the switch it dropped; and that sparks flew from the right side of the engine—either from the drivers or the pilot. Another witness testified that the engine dropped when it struck the cattle guard; that sparks flew from the front end, and that it almost instantly left the track. Immediately after the accident the guard rails were examined, and found to be badly scratched and bruised. As to the cause of the accident one of the witnesses testified as follows: "The cause of this accident was the cattle guard being low, and the timbers rotted under it, so it would give it a chance to sink when a heavy weight would strike it. When the trucks struck it, it sank, and the pilot struck the guard rail, and moved the switch, and the engine was thrown in onto the side track. * * * The timbers themselves, being the cattle guard, were rotten, and the front of the engine struck the rails over these timbers, and they sank down; and there were joints in the rails which would let it sink every time, and when it thus sank down the pilot caught the guard rail, and let the engine in there. The track was not strong enough in there to hold up one of these large engines going at the speed it was going, and consequently the track gave way. I know the pilot struck the guard rail by the way the front of the engine dropped. Just before the wreck the switch was set for the main line." Another testified regarding the condition of the cattle guard as follows: "The cattle guard at the point of the accident was about two inches too low and had been for six or seven months prior to the accident. * * * I own the land each side the cattle guard. Was about the cattle guard once a week, or maybe once a month. The ground at cattle guard was springy. The guard was full of dirt or mud up to the mudsills. Had been so ever since I bought the place. I noticed, after the accident, marks, scratches, bruises, and mutilations, on the guard rail. The whole of the cattle guard was depressed two inches. The mudsills were covered with mud

and dirt to nearly the top. The cattle guard, in my opinion, was two inches lower than it ought to be. * * * The rails were depressed because at the end of the cattle guard was a doubling switch, which gave it a chance to depress. The cattle guard was low. The guard rail was high the morning after the accident." Another said, "The depression in the cattle guard looked to be one and one-half or two inches." Still another said the guard rail was high, and the undersills were rotten. One of the defendant's section men said he took out the cattle guards, and that they were a little rotten. There was also evidence to the effect that the switch was set for the main line, both before and after the accident, and there is no room for the suggestion that the derailment might have been caused by the unauthorized throwing of the switch. Surely this evidence was sufficient to take the case to the jury. The circumstances were such as that a jury may have been satisfied that the cattle guard and the rails were defective; that defendant knew, or ought to have known, of the defect; and that these defects were the cause of the derailment of the train. It is not a case of pure conjecture, as defendant's counsel argue. From the evidence we have quoted, a jury might conclude that the alleged defective condition of the cattle guard was the proximate cause of the injury. Much more than the mere happening of the accident is proven. When the facts are not in dispute, and reasonable men may honestly differ as to the conclusion to be drawn therefrom, the case is for the jury, and not for the court. *Moore v. Railway Co.,* 93 Iowa, 484; *McFall v. Railway Co.,* 96 Iowa, 723; *Kerns v. Railway Co.,* 94 Iowa, 126; *McLeod v. Railway Co.,* 104 Iowa, 139, and cases cited.

Plaintiff offered in evidence photographs of the scene, taken just after the accident. The court was in error in not receiving them in evidence.

Some days after the accident, another engine belonging to the defendant was run over the cattle guards and switch

in question, and it sprung the switch, and ran off the track, just as the engine did on which plaintiff was injured. Evidence was offered to prove this fact, but it was rightly rejected. The engines were not the same, either in make or build; the track was not in the same condition; and there was no proof that the cattle guard and switch were in the same state of repair as before the accident. Indeed, there is every reason to think they were not, for the train that was wrecked at that point must have made a material change in the situation. For the errors pointed out the judgment is REVERSED.

GRANGER, C. J., not sitting.