## ST. LOUIS & S. F. R. CO. v. HART.

No. 5507.   Opinion Filed October 13, 1914.

Rehearing Denied February 23, 1915.

(146 Pac. 436.)

1.   **NEGLIGENCE—Proximate Cause—Proof.**  The plaintiff in a civil cause is not required to prove his cause beyond any reasonable doubt.  If he makes it appear to be more probable that the injury came in whole or in part from the acts of negligence alleged than from any other cause, that is sufficient.

2.   **RAILROADS—Crossing Accident—Neglegence—Violation of Or-**

St. Louis & S. F. R. Co. v. Hart.

dinance. The failure of a railway company to comply with a municipal ordinance requiring safety gates to be erected at points where the tracks of the railroads entering the city cross certain streets, and to employ suitable persons to operate the same, constitutes a violation of positive law, and culpable negligence; and evidence of such violation is sufficient to carry to the jury the case of a person injured by attempting to cross a spur track on a street at such crossing who is struck by a string of cars backed over such crossing by a switch engine; there being no light exposed at the forward end of the first car, nor a brakeman or other employe of the railway company stationed thereon or anywhere about such crossing, or bell rung or whistle sounded, to give warning of the approach of the train.

3. RAILROADS—Crossing Accident—Violation of Ordinance—Duty of Pedestrians. Where one approaching a railway crossing where safety gates are required by city ordinance, in the absence of evidence to the contrary, he will be justified in presuming that the railway company has complied with the ordinance, and will not be held to the same imperative duty of looking and listening as when he approaches a crossing where there are no gates and none are required.

4. RAILROADS—Crossings—Safety Gates—Ordinance. A city ordinance requiring every railway company operating lines of railroad across certain streets of the city to erect and maintain safety gates at said streets on each side of said railroad tracks, and to employ suitable persons to operate the same, construed, and held: (1) That it applies to all the street crossings created by the intersection of said lines of railroad and said streets, whether created by the main line or spur tracks of such railway company; (2) that said ordinance is reasonable; (3) that it is a proper exercise of the police power of the city.

5. NEGLIGENCE—Contributory Negligence—Question for Jury. Section 6, art. 23, Williams' Constitution, provides that: "The defense of contributory negligence * * * shall in all cases whatsoever be a question of fact and shall at all times be left to the jury."

6. RAILROADS—Crossing Accident—Evidence. In an action for personal injuries against a railway company, where want of ordinary care in maintaining a street crossing in a reasonbly safe condition is alleged, it is error to admit evidence of the condition of the crossing some eight or nine weeks after the injury was inflicted without evidence that the crossing was substantially in the same condition at the time of the injury as at the time to which the testimony relates.

7. TRIAL—Instructions—Evidence. An instruction predicated upon such evidence is also erroneous.

8. APPEAL AND ERROR—Harmless Error—Instructions—Evidence.

Section 6005, Rev. Laws Okla. 1910, provides that no judgment shall be set aside on the ground of misdirection of the jury, or the improper admission or rejection of evidence, unless in the opinion of the Supreme Court, after an examination of the entire record, it appears that the error complained of has probably' resulted in a miscarriage of justice, or constitutes a violation of a constitutional or statutory right of the aggrieved party.

9.  DAMAGES—Personal Injuries—Excessive .Recovery. After an examination of the entire record 'the court is of the opinion that a verdict for $10,000 is so excessive as to amount to a miscarriage of justice, which was probably the result 'of the actions of the trial court, held to be erroneous, and that the same should be set aside and a new trial granted, unless a remittitur is filed for all in excess of $5,000.

(Syllabus by the Court.)

*Error from Superior Court; Tulsa Court;*

*M. A. Breckenridge, Judge.*

Action by F. A. Hart against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed on condition that a remittitur be filed and the judgment corrected.

*W. F. Evans* and *R. A. Kleinschmidt* and *J. H. Grant,* for plaintiff in error.

*A. F. Moss* and *Ed Crossland* and *M. E. Turner* and *V. E. McInnis,* for defendant in error.

KANE, C. J. This was an action for damages for personal injuries, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. The injuries for which damages are claimed were inflicted upon the plaintiff at the intersection of Hudson street and a spur or industrial track of the defendant company in Oklahoma City. This spur leaves the main line a few blocks west of Hudson street, and terminates about a block and a half east thereof between Harvey and Robinson streets. It is used in serving shippers owning buildings along

an alley which runs east and west along the spur, and for no other purpose. Plaintiff alleges that he was walking south on the west side of Hudson street, and that when he was about to cross the spur track he heard the noise of an engine or train; that he was not positive whether the train was coming toward or going from him; that when he first heard the noise he was within 10 feet of the track and kept going until he got upon the track, when he discovered for the first time that the train was coming toward him; that thereupon he made a quick turn to draw back, but, in doing so, his left foot slipped into the space between the rail and the crossing plank provided for the flanges of the wheels; that when he first saw the train approaching it was 10 or 15 feet from him; that the train consisted of a string of box cars that were being slowly backed east by a switch engine over the crossing for the purpose of coupling onto other cars east of the crossing; that while his foot was fastened as above described the forward car ran upon it and crushed it so that amputation above the ankle became necessary; that after his foot became fastened between the rail and the plank he attempted to unlace his shoe with his right hand, and the fingers of that hand were also injured by the wheels.

The specific acts of negligence alleged are: (1) Defect in the crossing which caused the plaintiff's foot to become fastened between the rail and the plank; (2) that no bell was rung or whistle sounded to warn him of the approach of the train, nor was there a light exposed or a brakeman stationed upon the forward end of the approaching car; (3) that no safety gates were maintained or watchman employed at the crossing, although an ordinance of the city required gates to be maintained and watchmen to be employed at said crossing. The defense was: (1) A general denial; (2) contributory negligence; (3) that Ordinance No. 286, pleaded and set out in the plaintiff's petition, is not intended to, and does not, require the defendant to construct gates and to employ watchmen to operate the same across Hudson street at the point where said street is crossed by the defendant's

·spur track; that if said ordinance does require the defendant to construct and maintain gates across said street at said place, and to maintain a watchman there, and to construct gates at all such crossings named in said ordinance, that said ordinance is unconstitutional and void, and is not a reasonable exercise of the police power of said city, and that said ordinance is in conflict with the Constitution of the United States. Upon trial to a jury there was a verdict for the plaintiff in the sum of $10,000 to reverse which this proceeding in error was commenced.

The grounds of reversal presented by counsel for plaintiff in error in their brief are: (1) That their demurrer to the evidence should have been sustained, for the reason that the plaintiff's own evidence, viewed by the light of the physical facts, conclusively shows that the injuries of which he complains could not have been inflicted in the manner claimed; (2) that, even if the plaintiff's theory is assumed to be true, the proximate cause of his injuries was negligently stepping in front of a moving train without taking the ordinary precautions to determine whether it was coming toward or going from him; (3) error in admitting certain evidence over the objections of the defendant; (4) error in excluding competent, relevant, and material evidence offered by the defendant; (5) error of the court in giving certain instructions to the jury, to which instructions the defendant duly excepted; (6) error in refusing to give certain requested instructions, to which refusal the defendant duly excepted; (7) excessive damages; appearing to have been given under the influence of passion and prejudice.

We cannot agree with counsel for defendant that the physical facts conclusively refute the theory of the plaintiff as to the manner the injuries were inflicted. The evidence shows that the space between the rail and the plank was about 3 inches, and counsel contend that "it was a physical impossibility for plaintiff to have gotten a No. 8 or No. 9 shoe, measuring 4 or 4½ inches across the

sole in' the widest place, flat down into a 3-inch space." Whilst the theory of the plaintiff may seem improbable to the court, yet, in the absence of a more plausible explanation of the manner the injury occurred, we do not feel that we' would be justified in disturbing the finding of the jury upon that point. The plaintiff himself explained the details of the manner of his injury to the jury with great minuteness. Whilst the explanation seems somewhat involved, very likely it appeared quite clear to the jury, whose peculiar function it is to unravel and harmonize complicated combinations' of facts. The plaintiff in a civil cause is not required to prove his cause beyond any reasonable doubt; if he makes it appear to be more probable that the injury came in whole or in part from the negligence alleged than from any other cause, that is' sufficient. *St. Louis & S. F. R. R. Co. v. Rushing et al.,* 31 Okla. 231, 120 Pac. 973. We are satisfied, however, that there was not sufficient evidence to establish any want of ordinary care on the part of the defendant in keeping the crossing in proper repair and that this act of negligence cannot be charged against it. This being so, the circumstance of the plaintiff getting his foot caught in the crossing is only important on the question of contributory negligence as a probable explanation of why he did not get out of the way of the slowly approaching train, after he discovered that it was coming toward him. This feature of the cause will be more fully discussed hereafter.

We think there is sufficient evidence to take the case to the jury on the other allegations of negligence. The plaintiff testified that when he first saw the train backing toward him the bell was not ringing or the whistle sounding, and there were no lights exposed on the forward end of the first car, nor was there any brakeman or other employee of the railroad company thereon, or anywhere about the crossing, to warn travelers of the approach of the train. It is conceded that there was no gate erected or maintained or watchman employed at this crossing. There is abundant authority to support the proposition that the failure of a railway com-

pany to comply with a municipal ordinance requiring safety gates to be erected at points where its railroad tracks cross certain streets, and to employ suitable persons to operate the same, constitutes a violation of positive law, and culpable negligence, and evidence of such violation is sufficient to carry to the jury the case of a person injured by attempting to cross a railroad track on a street at such crossing, who is struck by a string of cars backed over such crossing by a switch engine, there being no light exposed at the forward end of the first car, nor brakeman or other employee of the railway company stationed thereon, or anywhere about such crossing, nor bell rung or whistle sounded, to give warning of the approach of the train. *Missouri P. R. Co. v. Hackett,* 54 Kan. 316, 38 Pac. 294, 28 L. R. A. 696; *Pittsburg, C., C. & St. L. R. Co. v. Banfill,* 206 Ill. 553, 69 N. E. 499; *Lakeshore & M. S. Ry. Co. v. Ehlert,* 19 Ohio Cir. Ct. 177; *Neininger v. Cowan,* 42 C. C. A. 20, 101 Fed. 787. This conclusion, of course, is based upon the assumption that the city ordinance requiring the maintenance of gates on Hudson street applies to the spur track, and that the ordinance itself constitutes a reasonable exercise of the police power of the city. The ordinance in general terms makes it the duty of every company operating a line of railroad across Broadway, Robinson, Harvey, Hudson streets, etc., to erect good and sufficient gates on said streets on each side of said railroad tracks and within 20 feet therefrom, and to employ suitable persons to operate the same; and further provides that such gates shall be kept open at all times except when cars, engines, or trains of cars are crossing said streets or tracks, at which time said gates shall be securely closed, and imposes a fine in the sum of not to exceed $100 for a violation of the same. We think there is no room for doubt that the purpose of this ordinance is to require all railroads operating within the city to erect and maintain gates and employ watchmen at the street crossings mentioned wherever any of their main, spur, passing, or industrial tracks cross the same at grade in the downtown congested district. The streets

mentioned are all crossed at grade in the congested downtown portion of the city by the main lines, spurs, switches, passing tracks, industrial tracks, etc., of the many railroads entering the city to such an extent as to form an almost inextricable network of railways and street crossings at grade, thereby requiring the utmost vigilance on the part of the traveling public using such streets, the municipal authorities, and the railways themselves to render these grade crossings even approximately safe. The expediency of the ordinance being obvious, and its language general, the scope of its usefulness ought not to be narrowed by construction. Therefore, we conclude, the ordinance is reasonable and applies to the spur track in question.

Some contention is made to the effect that the enactment of such an ordinance by the city is in conflict with section 18, art. 9 of the Constitution, and the case of *St. Louis & S. F. R. Co. v. Lewis,* 28 Okla. 453, 114 Pac. 702, is cited as authority sustaining this proposition. In that case it was held that the power to require the erection of gates and the employment of watchmen by railways at their own expense at points where their roads intersect streets in cities of the first class is conferred upon the Corporation Commission where the intersection of the streets and railroad tracks become dangerous to the life or safety of the persons and property using such railways for transportation as common carriers. This in no way abridges the general power to protect the interests of the city conferred upon municipalities by section 598, Rev. Laws 1910, which provides that cities of the first class shall have power "to regulate the crossings of railway tracks, and to provide precautions and prescribe rules regulating * * * the running of railway engines, cars and trucks within the limits of said city, and to prescribe rules relating thereto and to govern the speed thereof, and to make any other and further provisions, rules and restrictions to prevent accidents at crossings and on the tracks of railways and to prevent fires from engines."

On the next proposition counsel for defendant contend that the plaintiff having both looked and listened, and having seen and heard the train approaching, and having thereafter deliberately placed himself in front of it, he cannot recover, and the negligence of the defendant, if any, is wholly immaterial. Upon this proposition counsel state the facts somewhat too strongly in favor of their client. The evidence of the plaintiff is to the effect that he listened before reaching the crossing, and, whilst he heard the train, he did not know whether it was going from or approaching the crossing until he reached the track, whereupon he immediately sought to retrace his steps and return to a place of safety. In the instant case one cannot gather either from the briefs or argument of counsel what the record discloses, if anything, as to whether the plaintiff knew the railway company had not complied with the ordinance providing for the erection and maintenance of safety gates. In the absence of a showing on that point, we are justified in assuming that he did not know of the violation of the ordinance, but that he was proceeding on his way presuming that the gate had been actually erected in compliance with the ordinance. In such circumstances whether the plaintiff relied upon the open gate as an assurance that the train was going away from the crossing when he first heard it, and was therefore justified in making a less vigilant use of his eyes and ears than otherwise he would have been required to do to discover whether the train was going from or approaching the crossing, were questions of fact for the jury. It is frequently stated that the fact that a safety gate at a railway crossing is open is an implied invitation to cross and an assurance of safety from any passing train. *Blount v. Grand Trunk R. Co.,* 9 C. C. A. 526, 61 Fed. 375, 22 U. S. App. 129; *Central Trust Co. v. Wabash, St. L. & P. R. Co.* (C. C.) 27 Fed. 159; *Indianapolis Union R. Co. v. Neubaucher,* 16 Ind. App. 21, 43 N. E. 576, 44 N. E. 669; *Glushing v. Sharp,* 96 N. Y. 676; *Palmer v. N. Y. C. & H. R.*

Co., 112 N. Y. 234, 19 N. E. 678; Scaggs v. Delaware & H. Canal Co., 154 N. Y. 201, 39 N. E. 716.

Moreover, in this jurisdiction, "the defense of contributory negligence  *  *  *  shall in all cases whatsoever be a question of fact and shall at all times be left to the jury." Section 6, art. 23, Williams' Const. It is obvious, however, that this section does not contemplate that a plaintiff seeking damages for personal injuries is entitled to recover regardless of the question of fault or negligence on his part. We take it that, if the evidence conclusively shows that such an one deliberately walked in front of a moving train with suicidal intent and was killed, it would be the duty of the courts, trial or appellate, to set aside a verdict in his favor and grant a new trial. As we have seen in the instant case, the evidence of the plaintiff shows that he heard the train before reaching the crossing, but did not know that it was coming toward him until he had got upon the track, whereupon he immediately sought to retrace his steps and return to a place of safety. The evidence also is to the effect that the train was approaching very slowly, about three or four miles an hour, the gait at which a man ordinarily walks. If the plaintiff permitted a train approaching at that gait to run him down and injure him, there being nothing to prevent him from getting out of the way, the court probably would be justified in reversing the verdict in his favor and remanding the cause for a new trial upon the ground that there was no evidence reasonably tending to support the same; but, having arrived at the conclusion that there was sufficient evidence of negligence on the part of the defendant to take the case to the jury on that question, it would seem to follow that it was for the jury to say whether the testimony of the plaintiff as to getting his foot caught between the plank and rail was sufficient explanation of why he did not retire to a place of safety after he discovered that the train was backing toward him to absolve him from the charge of contributory negligence. As we have said before, in this jurisdiction the question of contributory negligence is always for the

jury. At most, the only function of the court is to define for the jury the meaning of the term "contributory negligence," as used in section 6, *supra,* and instruct them that it is always a question of fact for their determination. In no event is the court authorized to direct a verdict or sustain a demurrer to the evidence upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law.

The next assignment of error argued is predicated upon the action of the court in permitting a witness to testify as to the condition of the crossing some eight or ten weeks after the accident occurred without attempting to show that there had been any change in its condition in the meantime. All the witnesses who testified as to the condition of the crossing at the time the injury occurred seemed to be of the opinion that it was in ordinarily good condition, or that they observed nothing out of the way. This witness testified that at the time he examined it, "on the west sidewalk at the point where the plaintiff says that he received his. injuries," he found "the planks were loose, one or two of them, possibly more." The authorities are practically uniform to the effect, that without evidence that the crossing was substantially in the same condition at the time of the injury as at the time to which the testimony related, it was error to admit it. *Pennsylvania Co. v. Marion,* 104 Ind. 239, 3 N. E. 874; *Bach. v. Iowa Cent. R. Co.,* 112 Iowa, 241, 83 N. W. 959; *Brentner v. Chicago, M. & St. P. R. Co.,* 58 Iowa, 625, 12 N. W. 615; *Hoyt v. City of Des Moines,* 76 Iowa, 430, 41 N. W. 63; *M., K. & T. R. Co. v. Dunbar,* 49 Tex. Civ. App. 12, 108 S. W. 500; *Schmidt v. Coney Island & B. R. Co.,* 26 App. Div. 391, 49 N. Y. Supp. 777; *Redus v. Milner Coal & R. Co.,* 148 Ala. 665, 41 South. 634; *East Tenn. & W. N. C. R. Co. v. Lindamood,* 109 Tenn. 407, 74 S. W. 112; *Crandall v. Dubuque,* 136 Iowa, 663, 112 N. W. 555; *Berrenberg v. Boston,* 137 Mass. 231, 50 Am. Rep. 296; *Davis v. Alexander City,* 137 Ala. 206, 33 South. 863; *Chicago v. Vesey,* 105 Ill. App.

191; *Annapolis Gas & Elec. Light Co. v. Fredericks,* 109 Md. 595, 72 Atl. 534; *Goddard v. Enzler,* 123 Ill. App. 108.

We have examined the instructions given and the instructions requested and refused, and, in our opinion, the jury was instructed as to the law with substantial accuracy in all particulars, except an instruction given to the effect that:

"If the jury believe from the evidence that the defendant. failed to use reasonable and ordinary care to maintain said crossing in a reasonably safe condition for the use of pedestrians in the use of said sidewalk and that as a proximate and direct result of the defendant to use such care in the maintenance of said crossing the plaintiff in this case was injured, then you are instructed that your verdict should be for the plaintiff."

There was no evidence upon which this instruction could have been properly predicated, except the evidence as to the condition of the crossing eight or ten weeks after the accident happened, and the introduction of this evidence we have held was erroneous. It follows, as a matter of course, that the giving of the foregoing instruction also must be erroneous.

The question now arises whether these actions of the trial court constitute reversible error in the light of section 6005, Rev. Laws 1910, which provides that no judgment shall be set aside on the ground of misdirection of the jury, or the improper admission or rejection of evidence, unless, in the opinion of the Supreme Court, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a violation of a constitutional or statutory right of the aggrieved party. Keeping this statute in mind, we will examine this question in connection with the next assignment of error which is that the verdict is excessive. In our opinion, after an examination of the entire record, the verdict is entirely too large. The evidence discloses that the plaintiff was a single man of about 48 years of age at the time of his injuries;

that he was somewhat of a wanderer, and had no trade or profession, nor was he fitted for any vocational employment. For many years he worked at odd jobs from day to day, and prior to his injuries his earning capacity, when employed, was from $1.50 to $1.75 per day. His recovery from his injuries seems to have been complete, so far as suffering physical pain is concerned, and his earning capacity thereafter, according to his own testimony, is about $1.25 a day. There is nothing in the record to indicate that the plaintiff was more sensitive to mental or physical anguish, or that he suffered more poignantly from his injuries than the ordinary man; nor does it appear that there was any hope for bettering his condition or increasing his earning capacity in the future. It is true that the court is not justified in setting aside a verdict on account of being excessive, unless it appears to have been returned under the influence of passion or prejudice, and that this record discloses no evidence that the jury was affected by passion or prejudice, except the size of the verdict itself; and we would not set this verdict aside on this ground, or suggest a diminution thereof, if the record was entirely clear of error; and we would not hold the errors which appear in the record to be reversible if the verdict rendered seemed to us to approximate justice between the plaintiff and the defendant. We think, however, that the verdict of $10,000 upon the facts of this case, assuming them to be true, as found by the jury, constitute a miscarriage of justice, and that it was the result probably of the errors committed by the trial court. We have examined a great many of the opinions of the appellate courts of neighboring states which exercise the power of requiring a remittitur where it appears that the verdict is excessive with a view of determining the concensus of enlightened opinion as to what constitutes a fair verdict in somewhat similar circumstances, and find none where a verdict as large as the one herein has been allowed to stand. Among the cases examined are the following: *Nicholds v. Crystal Plate-Glass Co.* (Mo.) 27 S. W. 516; *Bell v. Globe Lumber Co.,* 107 La. 725, 31 South. 994;

*Budge v. Morgan's L. & T. R. & S. S. Co.*, 108 La. 349, 32 South. 535, 58 L. R. A. 333; *Kroener v. Chicago, M. & St. P. R. Co.*, 88 Iowa, 16, 55 N. W. 28; *Missouri Pac. Ry. Co. v. Dwyer*, 36 Kan. 58, 12 Pac. 352; *Brown v. So. Pac. R. Co.*, 7 Utah, 288, 26 Pac. 579.

In *Independent Cotton Oil Co. v. Beacham*, 31 Okla. 384, 120 Pac. 969, this court suggested the remittitur of $15,000 from a verdict for $25,000 for a similar injury in the case of a young man 20 years of age, engaged as a common laborer, whose earning capacity at the time of the injury was in the neighborhood of $1.50 per day. In the case at bar, as in the Beacham Case and the other cases cited above, compensatory damages only are claimed. A careful review of the record and the authorities convinces the court that the sum of $5,000 covers the full measure of damages to which the plaintiff is entitled, based solely upon the idea of compensation.

If a remittitur is filed for all in excess of such sum within 15 days from receipt of the mandate herein by the trial court, the judgment as thus corrected will be affirmed; otherwise the judgment will be reversed, and a new trial granted.

All the Justices concur.