*MIDLAND VALLEY R. CO. v. OGDEN.

No. 7051—Opinion Filed March 28, 1916.

Rehearing Denied July 25, 1916.

(159 Pac. 256.)

1. Trial—Taking Question from Jury—Demurrer—Determination.

A demurrer to the evidence admits the existence of all the facts which the evidence tends to establish, and all reasonable inferences of fact favorable to the demurree.

_____

*Appealed to the Supreme Court of the United States.

2. Master and Servant—Injuries to Servant —Actions—Question for Jury.

The erection and maintenance by a railway company of a temporary water plug, or other obstruction in such proximity to its track as to endanger the lives of its operatives while engaged in the performance of the usual and necessary duties of their employment, may, if injury result therefrom, be regarded as actionable negligence. Whether or not such obstruction is in fact so negligently placed and maintained is always a question to be determined by the jury from the evidence under proper instructions of the court.

3. Appeal and Error—Review—Harmless Error.

By virtue of section 6005, Rev. Laws 1910, no judgment shall be set aside on the ground of misdirection of the jury, or the improper admission or rejection of evidence, unless in the opinion of the Supreme Court, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a violation of a constitutional or statutory right of the complainant.

(Syllabus by Bleakmore, C.)

Error from District Court, Muskogee County; Farrar L. McCain, Judge.

Action by Della Ogden, administratrix of the estate of M. R. Ogden, deceased, against the Midland Valley Railroad Company. Judgment for plaintiff for $8,000, and defendant brings error. Affirmed.

O. E. Swan, for plaintiff in error.

Thos. F. Crosby and W. J. Crump, for defendant in error.

Opinion by BLEAKMORE, C. This case presents error from the superior court of Muskogee county. Della Ogden, administratrix of the estate of M. R. Ogden, deceased, sued the Midland Valley Railroad Company for damages on account of the death of her intestate, alleged to have been caused by the negligence of defendant. It is set forth in the petition:

That deceased at the time of his death, and for some time prior thereto, was employed by the defendant as a brakeman on its freight trains; "that said defendant sent M. R. Ogden on said run for the second time, said run being from Muskogee, Okla., to Ft. Smith, Ark., as a brakeman on a freight train of said defendant company, same being engaged in interstate commerce as aforesaid; that on the 21st day of December, 1911, at about 5 o'clock in the morning, being dark and before daylight, said deceased M. R. Ogden, while in the proper and ordinary discharge of his duties as such brakeman, and while attempting to come off the top of a box car in front of the caboose by the light of a lantern, and while descending a ladder on said box car, for the purpose of reaching and going upon a coal or flat car in front of same, and while

said freight train was running at a rapid rate of speed and was passing near mile post No. 43, about three miles from Keota, and while passing water station and pipe erected and maintained by said defendant railway company, said pipe being in close and dangerous proximity to passing trains and so dangerously close as to be within 14 or 15 inches of passing cars, and too close to permit workmen and employes of said defendant whose duties required them to pass up and down the sides of the freight cars from passing with safety and on account of the nearness of said water pipe so erected and maintained by defendant. deceased, while in the discharge of his duties as brakeman as above described, on the 21st day of December. 1911, was hit and struck by said water pipe so erected and maintained by this defendant, and hurled from said ladder and car, and crushed, mangled. and killed. through the negligence, carelessness, and fault of the defendant company, and without any fault or negligence on his part."

It appears from the evidence that Ogden. the deceased, received the injury causing his death before daylight on the morning of his second trip over defendant's line from Muskogee to Ft. Smith, his former run having also been in the nighttime; that shortly before his injury he left the caboose going forward over the tops of the cars, a lighted lantern in his hand, toward his position as head brakeman. He was last seen by another brakeman as he sat down near the corner of a box car where the "grabiron" is located, leaning forward to grasp such iron which led to a ladder down which he might have climbed to reach a tank car immediately ahead. At this instant the attention of his fellow brakeman was momentarily diverted, and when he again looked deceased was gone, there appearing instead a flash of light and also fire, as from a pipe, near the top of the car. The brakes were almost immediately applied; the train stopped and backed to the water station, where Ogden was found, some 20 or 30 feet from the water plug or standpipe, with an injury to his head, alive but unconscious. He was taken on the train to Ft. Smith, where, as a result of such injury, he died on the following day. About 9 o'clock on the morning of Ogden's injury, there was found on said water plug some skin and hair. The standpipe was a temporary one, having been erected a few months before the occurrences in question, when the regular water tank nearby failed to furnish an adequate supply. It was not in use, and had been ordered taken down soon thereafter, but was later re-erected in order that a photograph showing it and the surroundings might be taken. Such photograph was introduced in evidence, and is a part of the record. The evidence is conflicting as to the exact distance this water pipe was situated from the rail.

one witness, a former employe of defendant in charge of the same at the time of the injury, testifying that, in his opinion, it was 38 inches from the rail, while the employee who erected the pipe stated that on a level with the track it was 4 feet 7 inches from the rail, and at the height of a box car it leaned 4 or 5 inches further away from the rail. The testimony was also somewhat conflicting as to the distance from the rail such a water pipe might properly be constructed and maintained with reasonable safety to employees whose duties in passing the same on moving trains required the use by them of ladders on the side of cars projecting beyond the rails. While the evidence is that the ordinary box car extends out over the rails from 18 to 24 inches, there is no testimony as to how far the particular car upon which deceased was riding extended beyond the rails. The general superintendent of defendant, who had been engaged in the railway service more than 46 years, testified.

"My duties require me to familiarize myself with the kind of structures besides railroad tracks. A structure out at about the height of an ordinary box car, say from 5 feet to 5 feet 2 from the outside of the rail is a safe clearance."

Other witnesses for defendant stated that such a structure at the height of an ordinary box car, placed from 4 feet 10 inches to 5 feet 1 inch from the rail, would be at a safe distance. The superintendent and other witnesses further testified that such a structure, close enough to the track to strike a man coming down the ladder of a car, is unsafe.

It will be observed that the negligence charged against defendant is the erection and maintenance of the water pipe in dangerous proximity to its track. Whether defendant was guilty of negligence in the erection and maintenance of the particular water pipe with which deceased is alleged to have come in contact in the performance of his duties as brakeman, causing his death, was a question of fact to be determined by the jury; and whether the injuries from which he died were thus received was also one of fact to be so determined. It was urged by defendant that the evidence is insufficient to establish negligence on its part in this regard, or to show that deceased met his death by being struck by the water pipe, and therefore there was reversible error in overruling its demurrer to the evidence. In the light of the record, we do not conceive this contention of defendant tenable. The rule is that:

"A demurrer to the evidence admits all facts proven, admits the existence of the facts of which there is evidence tending to prove, and all the reasonable inferences which may

be drawn from the evidence. The question on demurrer is: Does the evidence, considering only that which is favorable to the demurree and yielding to him the full benefit of the reasonable inferences which it supplies and furnishes, entitle him to recover?" Crow v. Crow, 40 Okla. 455, 139 Pac. 122.

We are of opinion that the jury, under the facts and circumstances in this case, might rationally have determined that the evidence was sufficient to exclude any reasonable hypothesis other than that advanced by plaintiff as to the manner in which deceased received the injury causing his death, viz., by being struck by the water pipe of defendant, and that the jury were justified from such evidence in concluding that defendant was guilty of negligence in constructing and maintaining its water pipe in such proximity to its track as to endanger the lives of its employees, and particularly the deceased.

We are of opinion that the maintenance by a railway company of a temporary water plug, or other obstruction, in such proximity to its track as to endanger the lives of its operatives engaged in the performance of the usual and necessary duties of their employment, may, if injury result therefrom, be regarded in law as actionable negligence. The question of whether or not such an obstruction was in fact so negligently placed and maintained is always one to be determined by the jury from the evidence, under proper instructions from the court.

J. R. Roden, a witness for defendant, testified relative to the standpipe, as follows:

"Q. Have you ever ridden by that pipe? A. Yes, sir Q. Where? A. Well, several instances I have rode by there. Q. Where were you? A. Well, I rode by there on the side of a car; ordinarily I was on the top of the car or in the caboose, of course. Q. Did you ever ride by there on the side of a box car? A. Yes, sir; I have. Q. Did you notice the standpipe as you passed there? A. Oh, yes; it was noticeable, yes, sir. Q. Did it clear you? A. Yes, sir. Q. From your experience as a railroad man, did that pipe in its location afford a sufficient clearance for a man on the side of a box car? A. Well, it did ordinarily. I don't know how far, though, it cleared on the side of a car; yes. Q. Cleared you? A. Yes, sir; it cleared me. Q. You were standing on the side of a car? A. On the side of a car; yes, sir."

On cross-examination, he further testified:

"Q. I will ask you if you did not make the statement in the presence of me and Mrs. Ogden, in my office, some time in January or February, 1912, after being perfectly familiar with the location of this pipe, and that it would not clear a man on the side of a box car? A. No, sir; no such statement as that."

There was no objection to the introduction of this evidence. Later, the plaintiff, Della Ogden, testified:

"Q. Do you remember any conversation that you had with Mr. Roden? A. Why, I remember a conversation that I had with Mr. Roden in your office and in your presence. Q. Can you state the substance of it? A. Yes; we were talking about the standpipe, and Mr. Crosby and I asked him if it was in a safe condition, and he said, 'No, it was not'; that he would not risk his life on the side of a car at all to go past there; that it was in a dangerous condition."

Relative to this testimony, the defendant requested the court to charge the jury as follows:

"The court instructs the jury that in this case the plaintiff has introduced evidence which may tend to prove that the witness Roden at another time made a statement concerning the proximity of the standpipe which is contradictory to that made by him upon the stand in this case. You are instructed that the evidence of such contradictory statement has been allowed to be introduced solely for the purpose of impeachment, and that said proof cannot, if believed by the jury, be used by the jury as tending to establish the facts alleged to have been stated in such prior contradictory statement. The court instructs the jury, therefore, that proof of said inconsistent and contradictory statement does not tend, in the slightest degree, to establish the truth of the matter alleged to have been stated in said prior contradictory statement."

The refusal to give such instruction is assigned as error. While it may be conceded that the testimony of Mrs. Ogden as to the contradictory statement of Roden was competent only for the purpose of impeaching his credibility as a witness, and not as substantive evidence tending to establish the truth of the subject-matter of such statement, and it would have been proper for the court, by appropriate instructions, to have limited its probative qualities and effect to discrediting him as a witness, yet we cannot say that the jury considered it otherwise; or, if so, that such consideration resulted in a verdict different from that which would probably have been reached in the absence of such evidence, and thus prejudicially affected the rights of defendant. Even if such testimony was regarded by the jury as substantive evidence, it was only cumulative. Section 6005, Rev. Laws 1910, provides that no judgment shall be set aside on the ground of misdirection of the jury, or the improper admission or rejection of evidence, unless in the opinion of the Supreme Court, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a violation of a constitutional or statutory right of the

aggrieved party. St. Louis & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436.

The court refused to instruct the jury at the request of defendant that the verdict herein should be unanimous, but, on the contrary, charged the jury as follows:

"You are instructed that nine or more of your number may reach a verdict. If your verdict is unanimous, it will be signed by your foreman. If it is not unanimous, the jurors agreeing to the verdict will each sign the verdict returned."

The contention of defendant that there was error in this regard has been adversely determined by this court in St. Louis & S. F. R. Co. v. Brown, 45 Okla. 143, 144 Pac. 1075. The question, however, is not subject to review in this proceeding, and error cannot properly be predicated thereon, for the reason that the verdict was, in fact, unanimous.

There are other assignments of error which have been considered, but to which specific reference is not thought necessary. The judgment is for $8,000. The amount is not excessive.

From an examination of the entire record, we are satisfied that substantial justice has been done between the parties, and that there was no error in the proceedings below, prejudicially affecting the substantial rights of defendant.

The judgment should be affirmed.

By the Court. It is so ordered.