## CITY OF SAPULPA v. DEASON et al.

(Two Cases.)

Nos. 10817, 11266—Opinion Filed Dec. 21, 1920.

Rehearing Denied March 29, 1921.

(Syllabus.)

**1. Municipal Corporations — Duties — Maintenance of Safe Streets.**

A municipal corporation is charged with the duty of maintaining its streets in a reasonably safe condition for travel, and this duty rests primarily, as respects the public, upon the corporation; and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others by any act of its own.

**2. New Trial—Newly Discovered Evidence —Requisites.**

A rule of wide recognition regarding the granting of new trials on the ground of "newly discovered evidence" exacts that the evidence fulfill the following requirements: (1) It must be such as will probably change the result if a new trial be granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be merely to impeach or contradict the former evidence.

**3. Trial — Demurrer to Evidence — Motion for Instructed Verdict.**

The defendant's demurrer to the evidence or motion for an instructed verdict at the close of the evidence is properly overruled, where there is any competent evidence before the jury reasonably tending to support the verdict.

**4. Trial—Instructions—Sufficiency.**

Where instructions given, when taken together and considered as a whole, fairly present the law of the case, they will be held sufficient. Instructions examined, and held, to contain no prejudicial error.

**5. Appeal and Error—Excessive Verdict—Remittitur—Damages for Negligent Death.**

Evidence examined, and held, that the verdict for $25,000 is excessive upon the facts proven, and that the judgment should be reversed and a new trial granted unless a remittitur is filed for all in excess of $15,000 and interest thereon from date of judgment.

Harrison, Higgins, Bailey, and Collier, JJ., dissenting in part.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Mrs. H. L. Deason and children against the City of Sapulpa and the St. Louis & San Francisco Railway Company for damages for death of the husband and father of plaintiffs. Judgment for plaintiffs against the City of Sapulpa, and the city brings error, making the railway company a party defendant in error. Petition by the City of Supulpa for new trial on ground of newly discovered evidence overruled, and the city brings error. The two actions consolidated. Affirmed on condition of remittitur.

Leroy J. Burt and Robert B. Keenan, for plaintiff in error.

W. T. Banks and Caruthers & Carter, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Creek county; Hon. Lucien B. Wright, Judge.

This action was commenced in the court below by Mrs. H. L. Deason, widow of H. L. Deason, deceased, for herself and as next friend, for her minor children, Lyge, Roy Lee, Claude Lafayette, Harry Lou, and H. L. Deason, Jr., for use and benefit of the widow and said minor children, against the St. Louis & San Francisco Railway Company, a corporation, and the city of Sapulpa, a municipal corporation, defendants, for damages for the death of H. L. Deason, husband of Mrs. H. L. Deason and father of said minor children.

The city of Sapulpa, a municipal corporation, defendant below, is the plaintiff in error in this court, and Mrs. H. L. Deason, for herself and her minor children, and the St. Louis & San Francisco Railway Company, a corporation, are defendants in error.

The defendant in error Mrs. H. L. Deason, for herself and her minor children, in her petition below alleges that the St. Louis & San Francisco Railway Company is a corporation chartered under the laws of some state other than Oklahoma, with its principal office at St. Louis, Mo., and with an agent at Sapulpa, Okla., and that it runs a line of railroad

through Creek county, Okla., and through the city of Sapulpa; that the city of Sapulpa is a municipal corporation, a city of the first class in Creek county, Okla., and that the St. Louis & San Francisco Railway Company and the city or Sapulpa built and maintained a viaduct over the lines, switch yards, and yard switches on the line running west from the depot at Sapulpa; that said St. Louis & San Francisco Railway Company and the city of Sapulpa had entered into an agreement to build and maintain in safe condition said viaduct over said railroad yards connecting North Sapulpa with South Sapulpa; that said railway company and said city of Sapulpa did build said viaduct jointly and they did agree to maintain said viaduct in safe condition for travelers to cross over said viaduct on foot or in any kind of vehicle; that on the 3rd day of March, 1917, the date of the death of said H. L. Deason, Sr., and prior thereto, both the St. Louis & San Francisco Railway Company and the city of Sapulpa were guilty of negligence in maintenance of said viaduct roadway, in that they caused a cleat some four or five feet long and four by four inches square to be nailed down on the floor of said viaduct in quartering position at a place where the bend of the viaduct is located; that the deceased, H. L. Deason, Sr., was going south over the viaduct on said date, driving a truck; that he met a car at the bend going north; that deceased kept to the right of roadway as per rules of road, and the front wheels of the car driven by deceased, and carrying himself and son, struck the four by four inch cleat which was fastened to the floor of the viaduct roadway; that it caused the car of deceased to slue, so that the front of his car struck the rail on the east side of the roadway, breaking the rail and letting the car drop to the ground, instantly killing H. L. Deason, Sr.

The defendant in error Mrs. H. L. Deason, in her petition below, further alleged that both the St. Louis & San Francisco Railway Company and the city of Sapulpa were jointly and severally negligent and liable to Mrs. H. L. Deason and her minor children for the wrongful and negligent killing of the husband and father of Mrs. H. L. Deason and said minor children; that they were negligent in not properly maintaining said viaduct at said point in a manner that could insure the safety of people in crossing the same; that they were jointly negligent in fastening a 1½ or 2x6-inch cleat on the surface of the viaduct roadway in such a way that, the front wheels of said deceased's car striking the cleat, caused his car to slue to one side and drop off the bridge, after breaking the

wooden rails; that they were negligent in maintaining said viaduct in an unsafe condition to insure cars from going through the railing, in that they caused said guard rails to be constructed and maintained of wood instead of iron or steel; that if said guard rail had been of iron or steel, when the car slued and collided with the rail of said iron or steel it would have "killed" said motor engine and stopped the said motor car on the roadway; that said wooden guard rails at the place were rotten and unsafe, and that this fact was known to both the St. Louis & San Francisco Railway Company and the city of Sapulpa; that at the time of the death of said H. L. Deason, deceased, he was —— years of age and was running a transfer business in the city of Sapulpa and was making net $20 per week; that by reason of the wrongful death caused by the negligence of both the St. Louis & San Francisco Railway Company and the city of Sapulpa, she and her minor children were damaged in the sum of $60,000.

To this petition the plaintiff in error, the city of Sapulpa, filed a motion to strike out unnecessary parties; same was by the court overruled. The plaintiff in error, the city of Sapulpa, then filed an answer which is, omitting the caption, as follows:

"Comes now the city of Sapulpa, a municipal corporation, defendant herein, and for answer to the petition of the plaintiff, alleges and states: (1) That it denies generally and specifically each and every allegation therein contained except as specifically herein admitted. (2) The defendant, the city of Sapulpa, admits that it is a municipal corporation, a city of the first class, duly organized and existing under a charter form of government as provided for under the laws of the state of Oklahoma. (3) For further answer, the city of Sapulpa alleges and states: That the deceased, H. L. Deason, on the day and date of said alleged injury as set out in the plaintiff's petition, was guilty of negligence in this, to wit, that he was an inexperienced driver of a truck, and was particularly inexperienced with the truck he was driving at said time and place; that he was incompetent and unable to drive and operate said truck and in a safe and careful manner; that at said time and place he drove said truck at a high and dangerous rate of speed; that he then and there failed and neglected to control the speed of his car or truck and failed and neglected to keep his car upon the roadway of said viaduct and carelessly and negligently permitted said car under high speed to head into the railing constructed upon and around the said viaduct and to be precipitated to the ground below; that by reason of the fault, neglect, the carelessness and inexperience of the said H. L. Deason, said alleged injury occurred."

Trial was had before a jury, and on the 21st day of February, 1919, the jury returned a. verdict in the sum of $25,000 in favor of the defendant in error Mrs. H. L. Deason and her minor children and against the city of Sapulpa. Thereafter and within three days, to wit, on the 24th day of February, 1919, the plaintiff in error, the city of Sapulpa, filed a motion for new trial, same being as follows, omitting the caption:

"Comes now the defendant, the city of Sapulpa, and moves the court to grant a new trial in the above-entitled cause for the following reasons affecting materially the substantial rights of said defendant, to wit: (1) Excessive damages given by the jury, appearing to have been given under the influence of passion and prejudice. (2) Error of law occurring at the trial and excepted to by defendant, city of Sapulpa. (a) In permitting the plaintiff to introduce certain evidence that was incompetent, irrelevant, and immaterial to the issue. (b) In refusing to admit certain evidence offered by the city of Sapulpa, which is competent, relevant, and material to the issues. (c) In overruling defendant's demurrer to the evidence offered by the plaintiff on the ground that said evidence was not sufficient to establish a cause of action against the defendant city of Sapulpa. (d) In permitting plaintiff to amend her petition setting up the following facts: 'That decedent, while on the viaduct approach, in driving the truck, was compelled to turn his car to the right to avoid collision with fast approaching car, and in doing so threw his truck into the railing, and was precipitated to the ground,' said amendment being made at the close of plaintiff's testimony. (e) In giving to the jury, court's instruction No. 1. (f) In giving to the jury, court's instruction No. 4½. (g) In giving to the jury, court's instruction No. 5. (h) In giving to the jury, court's instruction No. 6. (i) In refusing to give to the jury, defendant's instruction No. 3, and excepted to at the time by the defendant. (j) In overruling the city of Sapulpa's demurrer to the evidence, after the plaintiff had, with permission of the court, amended the petition with reference to the decedent being compelled to suddenly change the course of his car to avoid colliding with a fast approaching car running up the approach (3) That the verdict of the jury is not sustained by sufficient evidence, and is contrary to law."

And thereafter, to wit, on the 27th day of March, 1919, the plaintiff in error, city of Sapulpa, filed a second motion for new trial on the ground of newly discovered evidence.

Thereafter, on the 11th day of April, 1919, the court overruled the plaintiff in error the city of Sapulpa's motion for new trial.

Thereafter a petition in error was filed in this court, being case No. 10817.

Thereafter, on the 30th day of October, 1919, the plaintiff in error, the city of Sapulpa, filed in the court below, its petition for new trial on the ground of newly discovered evidence. Said petition for new trial, omitting the caption, is as follows:

"Comes now defendant, the city of Sapulpa, and respectfully petitions this honorable court for new trial and in support of its said petition alleges and states as follows, to wit:

"1. That on February 21, 1919, during the January term of this court, this cause was tried and judgment rendered therein against the city of Sapulpa, defendant, for the sum of twenty-five thousand dollars.

"2. That on February 24, 1919, there was filed by said defendant city of Sapulpa a motion for new trial. That subsequently and on March 27, 1919, another motion for new trial upon the ground of newly discovered evidence was filed by the defendant city of Sapulpa; that on the 11th day of April, 1919, same being a regular day of the March term of said court, this cause came on for hearing upon the original motion for new trial and the motion for new trial upon the ground of newly discovered evidence and the court overruled both motions, to which ruling of the court defendant city of Sapulpa excepted and obtained an extension of time in which to make and serve case-made and perfect its appeal. That subsequent to the court's ruling on said motions, case-made was prepared, settled, and filed in the Supreme Court of the state of Oklahoma.

"3. That subsequent to the court's ruling upon said motions, the perfecting of said appeal and during the July term of said court, during the month of October, defendant city of Sapulpa discovered two witnesses who saw the catastrophe upon which is the basis of this action. That Will L. Collins and John Collins, newly discovered witnesses, will testify that on the 3rd day of March, 1917, they lived on the north side of the Frisco tracks in the city of Sapulpa, and at the time were working at the Bartlett-Collins Glass Plant, and that they drove back and forth to work in a Ford touring car (five passenger), and that at about noon of the day that H. L. Deason was killed they were on the south approach to the viaduct in said Ford car on the way home to dinner; Will L. Collins was driving the car, and John, his brother, was with him, both in the front seat; that as they were going up the approach they noticed a truck approaching from the turn in the viaduct, or in other words, at the point where the viaduct proper and the approach join, and that the Deason truck had the curtains up and the driver's cab enclosed and the same was moving at eight (8) or ten (10) miles per hour; that as both cars approached the turn Will L. Collins noticed that H. L. Deason was looking down at his feet and not looking ahead, and to attract his attention Will L. Collins sounded the

claxon horn on the Ford, and as he did that Deason looked up; at that time the cars were thirty or forty feet apart; that Deason was on the left side of the center of the viaduct as he was driving south and east thereon; Deason, in order to avoid a collision, turned his truck to the right, thus heading his car straight for the railing on the viaduct; that Will L. Collins crowded to the right or east side of the viaduct, keeping his car close to the railing, in fact, ran his car against the railing to avoid collision; that if Deason had not cut his car short to the right, the left front wheel of the Deason truck would have hit the Ford car about midway in front; that as Deason cut his car short to the right he only had twelve (12) or fifteen (15) feet to go to the railing; his truck hit the railing almost squarely, broke the railing, and went over the side of the viaduct to the ground below. The day was damp and cloudy and perhaps raining a little at the time.

"4. That defendant city of Sapulpa has used due diligence in attempting to ascertain the names of these two witnesses, in order to obtain their testimony; that defendant knew there was a Ford car on the viaduct on that day, but was unable to find out the names of the occupants from W. G. Fairchild, former city attorney, or any of the former city officials; that telegrams were sent to W. S. Brown, former commissioner of public affairs and city official in charge of highways, who answered that he had been unable to find these men; that W. C. Stallard testified in this case that he met the Ford touring car coming up the approach and that H. L. Deason was driving his truck just behind his car and that he thought the man driving the Ford car was named Cox; since that time defendant has inquired of numerous parties by the name of 'Cox' to ascertain if they knew anything about persons who might have been driving this car; owing to this mistake in the name defendant did not find out that the occupants of the car were named Collins and who they were until during the month of October.

"5. That defendant's failure to produce the above-named witnesses at the trial of said cause was without fault, and as the discovery arose after the term at which said cause was tried and this application is being made during the first term after such discovery.

"Wherefore, premises considered, defendant city of Sapulpa respectfully prays this court to grant a new trial upon the ground of newly discovered evidence above set forth."

On the 12th day of January, 1920, a hearing was had in the court below upon the plaintiff in error's motion for new trial, and it was by the court overruled. Exception was taken, appeal bond fixed and appeal granted, and an appeal taken to this court from the order of the court below overruling plaintiff in error's motion for new trial upon the ground of newly discovered evidence, said case in this court being numbered 11266.

Thereafter this court consolidated these causes of action, and they are now before this court for review under Nos. 10817 and 11266, consolidated.

The St. Louis & San Francisco Railway Company, one of the codefendants below and defendant in error here, to the petition of defendant in error Deason filed answer, denying generally all the material allegations of the petition, and, further answering, alleged that the death of H. L. Deason, deceased, was due to his own negligence and carelessness. without which the same would not have occurred. And for further answer said railway company pleaded a certain contract which had been entered into on the 28th day of April, 1913, between the railway company and the city of Sapulpa, for the construction and maintenance of a viaduct and approaches thereto across the right of way and tracks of said railway company in the city of Sapulpa at the place where the same was afterwards constructed, and that the decedent was injured and killed at a point on the south approach to the viaduct proper, and that by reason of said agreement between the railway company and the city of Sapulpa the St. Louis & San Francisco Railway Company was not liable for the death of H. L. Deason.

At the conclusion of the taking of evidence, the defendant in error the St. Louis & San Francisco Railway Company moved the court to instruct the jury to return a verdict in favor of the railway company for the reason that under the pleadings and the evidence herein it appeared that the plaintiffs were not entitled to recover against said defendant. This motion the court sustained, and gave instruction No. 1, covering said matter.

There was introduced in evidence by stipulation of the parties certain ordinances of the city of Sapulpa and a contract between it and the St. Louis & San Francisco Railway Company for the construction of a certain viaduct and approaches thereto over the tracks and grounds of the railway company connecting with certain streets of the city and the north and south end of such viaduct and approaches, providing that the railway company would construct the viaduct of about 360 feet and the north approach thereto, and that the city would construct the south approach thereto, the entire length of the same from end to end of the approaches to be approximately 1,030 feet; that the same, when completed, was to be turned over

to the city for its maintenance and upkeep for the use of the traveling public, except the Frisco company should maintain and renew said viaduct, except the floor and the painting of the same, likewise the north approach. The city was to construct and maintain the south approach to the viaduct.

The record discloses that the viaduct proper was of steel construction running north and south, and that the south approach, the part constructed by the city, and where the injury complained of occurred, was of wooden construction, and what is known and referred to as trestle, and joined on to the south end of the viaduct, and began immediately to curve around to the east and continued to the east at right angles to the viaduct to intersect a fill or dump. This south approach was railed or bannistered on the sides, formed by upright posts 4 x 4 bolted by two bolts to the ends of the floor joists, the posts being about 3½ feet above the floor and on the inside thereof, three 2 x 6's between the floor and the cap, the cap formed by a 2 x 6 lying flat on top of the posts and a 2 x 6 extending from the top of the cap down to and fastened to the top of the posts. There was a guard rail 4 x 6 spiked on top of the floor and against this bannister work. The record discloses that this structure had been completed and open to the public for travel for about five years prior to the injury, and maintained exclusively by the city. The acts of negligence alleged by the plaintiffs, as we have seen, were in the maintenance of said roadway, in that they caused a cleat some four or five feet long and 4 x 4 inches square to be nailed down on the floor of the said viaduct in quartering position at the place where the bend of the viaduct is located; that the deceased was going south over the viaduct driving a truck; that he met a car at the bend going north; that he kept to the right of the roadway and the front wheels of the car, turned by deceased, struck the 4 x 4 inch cleat which was fastened to the floor of the viaduct roadway; that it caused the car to slue so the front wheels of his car struck the rail at the north side of the road, breaking the rail and letting the car drop to the ground, instantly killing him; and that they were negligent in maintaining said viaduct in an unsafe condition to insure cars from going through the railing, in that they caused said guard rails to be constructed and maintained of wood instead of iron or steel; that if said guard rail had been of iron or steel, when the car slued and collided with the rail of said iron or steel it would have "killed" said motor engine and stopped the said motor car on the roadway; that said wooden guard rails

at the place were rotten and unsafe, and that this fact was known to both the St. Louis & San Francisco Railway Company and the city' of Sapulpa.

The record further discloses that during the progress of the trial the plaintiffs were permitted without objection to amend their petition by alleging "that decedent while on the viaduct approach, in driving the truck, was compelled to turn his car to the right to avoid a collision with fast approaching car, and in doing so threw his truck into the railing, and was precipitated to the ground."

The testimony shows without dispute that on the day of the accident the deceased left his home on the north side, at a little past the noon hour, with his son, about 13 years of age, in a three-quarter or one-ton Republic truck; that the deceased was driving the truck seated on the left side, his son occupying the right side, and that it was a cold, windy day and misting rain, and near or right about the center of the main viaduct from north and south the deceased stopped the truck and they put up the side curtains to the cab, and while doing so, a car passed them going in the same direction, and immediately thereafter the deceased started his truck, and on reaching the bend about where the south approach made the turn another car was approaching from the south and the truck, instead of turning to the left, following the bend in the approach, apparently continued practically south, striking the west rail or bannister, breaking through the same, and plunged to the ground, a distance of about 25 or 30 feet, the truck falling on the deceased, killing him instantly, and the boy was picked up in an unconscious condition, in which condition he remained for some four hours thereafter.

Concerning the accident, the boy testified upon the trial as follows:

"Q. This car that passed you, did it pass you on the right or the left side? A. On the left side. Q. Did your car get up any speed from the time you started again until this accident occurred? A. No, sir. Q. As this car approached you coming from the east—southeast, on the approach, were you watching that car or watching your father's driving? A. Well, I never noticed the other car coming until we got near the curve. Q. Nearly ready to turn? A. Yes, sir; and I was looking at the other car. Q. And it was coming so fast you were watching it? A. Yes, sir. Q. Was your car riding smoothly? A. Yes, sir. Q. Didn't appear to be in any rough place or any thing of that kind? A. Until we started off the curve, and then it started bouncing. Q. What do you mean by

that? A. When it came off the curve, the cleats on the floor that was on the viaduct, whether or not I noticed it? Q. I am talking about as your car came down and you were leading up to this other car, was your car running smoothly at that time? A. It was until after we left the curve. Q. Until after you got off of the viaduct, you mean? A. Yes, sir. Q. How far down on that approach were you? A. I couldn't say. Q. When the accident happened? A. I couldn't say. Q. Well, can you estimate the distance? A. No, I don't think I can exactly. Q. You say the car rode roughly after you got off the viaduct proper? A. Yes, sir. Q. How far did your car run while it was running roughly, before the accident happened? A. Well, I noticed—oh, I couldn't know how many feet it was; I noticed the front wheels would hit them cleats and it would bounce up. Q. Going over them? A. Yes, sir. Q. I want to ask you one other question. After you got off of the viaduct proper, did your father turn the wheels toward the east to go around the curve, or did he just keep straight on? A. He turned them. Q. The car had been turned then and was headed southeast when it ran into this bannister; is that the way you understand it? A. No; I don't quite understand. Q. Well, you understand the viaduct is straight and runs north and south? A. Yes, sir. Q. And the curve comes off around towards the southeast? A. Yes sir. Q. Now, did your father steer the car around towards the southeast before this accident, or did he just drive straight off the viaduct proper and right straight on until he struck the bannister? A. I noticed he turned the wheels over. Q. He had turned the wheels towards the southeast? A. Yes, sir."

This witness was the only eyewitness that testified at the trial, and the foregoing testimony of his was in no way rebutted or contradicted.

The first assignment of error discussed by counsel is:

"The district court erred in permitting defendant in error to introduce in evidence the stick of timber, plaintiff's exhibit 'A,' alleged to have been a standard or upright piece of the railing or bannister on the viaduct at the place where the Deason car went over, for the reason none of the plaintiff's witnesses were positive as to where it was picked up or taken from, and it was never properly identified as being a standard or a part of the railing at the time of the accident."

We cannot agree with counsel in this contention. Mr. Guthrie, a witness for plaintiff, testified as follows: .

"Q. Where did you pick that piece of timber up? A. It was one of the upright pieces of timber in the viaduct that was pushed over and broke off where the car went over. Q. Did you get it off the ground or off the edge of the viaduct? A. I think I got it hanging yet to the viaduct. Q. This, then, was a part of the railing around the outside? A. Yes, sir."

Dee Dye, one of the witnesses, testified as follows:

"Q. Would you recognize one of those upright pieces that were on the bannister were they shown to you? A. Yes, sir. Q. Do you recognize this as one of the upright pieces that was on the bannister? Examine it. A. Yes, sir."

Concerning this, the witness Lige Deason testified:

"Q. Where has this piece of timber been since the time (referring to the time Mr. Guthrie testified he brought it to Mrs. Deason's home)? A. It has been at the house, in the wash-house, ever since it happened. Q. Who brought it to the court-room down here from home? A. I did."

Witnesses of the defendant fully examined the piece of timber in question and stated, in substance, that the same was not one of the upright standards on the approach of the viaduct. The record discloses that this piece of timber was defective by reason of decay or rot. We think this became a question for the jury to pass on, and that the court did not commit error in admitting this exhibit in evidence for the consideration of the jury.

The next assignment of error discussed by counsel is:

"The court erred in instructing the jury that under the law and evidence it was their duty to return a verdict in favor of the defendant St. Louis & San Francisco Railway Company, for the reason that the agreement as set out is void for the reason that it attempts to relieve the railway company of providing a means of travel over and across the right of way and tracks of the company, whereas, under the laws of the state of Oklahoma, it is the duty of the railway company to provide and maintain such a highway as the one in question, * * * and the railroad company cannot relieve themselves of such liability by a contract with the city; that said contract is void and any negligence in construction or maintenance of such viaduct and approach is the negligence of the railway company."

We think that if error was committed in this respect, it was error of which plaintiffs can complain, but not the city. Moreover, there is nothing in the pleadings of the defendant whereby it sought any relief against its codefendant, the railway company, in any event, and in these circumstances we fail to see any reason why the city should be allowed to pick a quarrel with its codefendant for the first time in this court on appeal, and one, too, in which the plaintiffs have no concern and would occupy the position of disinterested bystanders.

This would present a situation that, so far as we are advised, is unauthorized.

Assignments of error Nos. 4, 5, and 7 go to the instructions given by the court in paragraphs 3, 4½, and 5. We have carefully examined the instructions complained of and find that the criticisms thereof are without merit, as they were substantially a correct statement of the law, and that the trial court committed no error in giving same.

The eighth assignment is that the court erred in overruling the defendant's demurrer to the evidence. This contention is not well taken, for the reason that primary negligence of the defendants and contributory negligence of the plaintiffs, decedent were involved, and the testimony upon both of these issues was conflicting, and, in these circumstances it would have been reversible error for the court to have sustained a demurrer to the evidence.

Article 23, sec. 6, of the Constitution provides that "the defense of contributory negligence or of assumption of risk shall in all cases whatsoever, be a question of fact, and shall at all times be left to the jury"; and, as has frequently been held by this court, "where there is evidence reasonably tending to support the issues on the part of the plaintiff and the evidence on the part of the defendant conflicts therewith, a determination thereof is for the jury." Katterhenry v. Williamson, 78 Okla. 221, 190 Pac. 404; Jameson v. Flournoy, 76 Okla. 227, 184 Pac. 910; Alva Roller Mills v. Simmons, 74 Oklahoma, 185 Pac. 76; Davis v. Ball, 76 Okla. 252, 185 Pac. 105; Buss v. Chicago, R. I. & P. R. Co., 77 Okla. 80, 186 Pac. 729; McKone v. McConkey, 77 Okla. 3, 185 Pac. 520.

The 11th assignment of error is that the trial court erred in overruling the defendant's motion for new trial upon the grounds of newly discovered evidence. In the case of Vickers v. Philip Carey Co., 49 Okla. 231, 151 Pac. 1023, in syllabus paragraph 4, this court said:

"A rule of wide recognition regarding the granting of new trials on the ground of 'newly discovered evidence' exacts that the evidence fulfill the following requirements: (1) It must be such as will probably change the result if a new trial be granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence."

In the instant case the trial court took testimony, offered by the defendant in support of its motion for a new trial upon the ground of newly discovered evidence, of two witnesses, to wit: Will L. Collins and John D. Collins, who testified that they were brothers and occupied the car that met the deceased upon the approach to the viaduct and saw the accident complained of, and their testimony in some respects supported the contention of the defendant, that the deceased was not well skilled in handling a motor truck, but their testimony was confined exclusively to what occurred under the excitement at the time of the accident.

Will Collins testified that he had remained in Sapulpa and Creek county practically all the time since the accident occurred, and J. D. Collins testified to having remained in the city of Sapulpa and Creek county, except for a period of a few months that he was in the army.

At the conclusion of the hearing, Mr. Burt, counsel for plaintiff, in addressing the court said:

"The Supreme Court has laid down six rules: (1) The testimony must be such as would probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issues; (5) it must not be merely cumulative to the former evidence; and (6) it must not be merely to impeach or contradict the former evidence. Now these are the six rules by which the court may hear the petition for a new trial. Now did the court overrule or deny the petition upon any one of those grounds? The Court: Upon all grounds, except due diligence."

The court thereafter rendered a judgment overruling the motion. From an examination of this part of the record we cannot say that the trial court abused its discretion in overruling the motion for a new trial upon the ground of newly discovered evidence.

The 10th assignment of error is that the verdict was excessive. It is disclosed by the record that the decedent was 40 years of age, was engaged in the transfer business in the city of Sapulpa, in which he had an interest, and that he drew from the business $20 per week, which was spent in the support of his family; that his life expectancy, as shown by the American Mortality Table, was slightly in excess of 28 years; that he left surviving him these plaintiffs, that is, the wife and four small boys, the oldest of whom was about 16 years, and that just four weeks

# 58

81 Oklahoma Reports

1920, permitted to file its petition in inter-
after his death a fifth child was born. The
verdict of the jury was for $25,000.

The measure of damages being compensa-
tory only, we believe the verdict in this
amount is excessive. Authorities may be
cited pro and con sustaining a verdict in this
amount and holding such amount to be ex-
cessive or not, but such of the cases turns
upon the particular facts involved, and a
comparison with the facts here can serve no
useful purpose. What would fairly and rea-
sonably compensate the plaintiffs for the loss
sustained is the test, and not that if the de-
ceased had lived out his life expectancy, as
counsel for defendant in error seems to think
should be the test. The minor children of
the deceased, on attaining their respective
majorities, would have no further claim for
compensation by reason of the death of their
father. Where it clearly appears that the
jury has committed some palpable error or
acted upon some improper bias, influence, or
prejudice, or has clearly mistaken the rules
of law by which damages are to be regulated,
the verdict can be set aside. St. Louis & S.
F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60;
Slick Oil Co. v. Coffey, 72 Oklahoma, 177 Pac.
915. And where a verdict is excessive for
any of the reasons cited, the Supreme Court
may direct a reversal of the cause or give
the plaintiff the option to remit the amount
held to be excessive and allow the judgment
as modified to stand. St. Louis & S. F. R.
Co. v. Hart, 45 Okla. 659, 146 Pac. 436; M.,
O. & G. R. Co. v. Parker, 50 Okla. 491, 151
Pac. 325; St. L. & S. F. R. Co. v. Hodge,
supra; Slick Oil Co. v. Coffey, supra.

Being of the opinion that the jury has
erred in some one of the particulars named,
and that the verdict is clearly in excess of
any sum that could be based upon the idea
of compensation alone, but being equally con-
vinced that in all other respects the verdict
of the jury is sustained by the evidence, it is
therefore ordered that if the plaintiff will file
a remittitur for all in excess of the sum of
$15,000 and interest thereon from the date
of the verdict within 30 days from receipt of
the mandate herein by the trial court, the
judgment as thus modified will be affirmed;
otherwise, the judgment will be reversed and
a new trial granted.

RAINEY, C. J., and KANE, PITCHFORD,
and McNEILL, JJ., concur. HARRISON,
HIGGINS, BAILEY, and COLLIER, JJ., dis-
sent, being of the opinion that the same
should be reversed and remanded for a new
trial.