## CITY OF PONCA CITY v. REED, Adm'r.

No. 16056—Opinion Filed Dec. 8, 1925.

**1. Negligence—Violation of Civil Ordinance with Illegal Penalty.**

The ordinances provided for, under section 4576, C. S. 1921, are of two general classes, civil and criminal, as they provide rules and regulations for business affairs or define and penalize petty offenses; and an ordinance of the first class that provides for an unlawful penalty for its violation is not thereby rendered invalid as a rule of conduct in business, and incompetent as evidence on the issue of negligence in a proper case.

**2. Same—Ordinance as Evidence.**

Where the action is based on negligence, and the evidence tends to show that a particular act was required or prohibited by ordinance and that the violation of the same contributed to the injury complained of, then the ordinance may properly be admitted on the question of negligence, whether pleaded or not. But the rule is otherwise when the action is founded on a violation of the ordinance.

**3. Appeal and Error—Necessity for Objections Below—Failure to Move to Strike Evidence.**

Where the defendant testified to a state of facts tending to show that changes were made in the premises after the injury complained of occurred, and plaintiff is permitted to cross-examine the witness as to such changes, and the answers are given before objection is made, and there is no motion to strike the evidence from the consideration of the jury, such evidence cannot be urged as ground for reversing the judgment.

**4. Damages—New Trial — Excessive Damages.**

A verdict will not be set aside for excessive damages unless it clearly appear that the jury committed some gross and palpable error or acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which damages are regulated. City of Tulsa v. Wells, 79 Okla. 39, 191 Pac. 186.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Kay County; Claude Duval, Judge.

Action by Bert K. Reed, administrator of estate of Roy A. Reed, deceased, against the City of Ponca City, Okla., for damages. Judgment for plaintiff, and defendant appeals. Affirmed.

Grover C. Jacobson, R. O. Wilson, and F. C. Duval, for plaintiff in error.

B. C. Wieck, for defendant in error.

Opinion by THREADGILL, C. This action was brought January 23, 1923, by the administrator of the estate of Roy A. Reed, against the city of Ponca City, a municipal corporation, to recover damages for the death of Roy A. Reed, alleged to have been caused by the negligence of said city, while he was in its employ at its electric light plant, and for the benefit of Ruth E. Reed, only daughter and heir, who was of the age of 7 years. The deceased was a strong, robust, industrious man about 34 years of age with a life expectancy of about 32 years. He was a widower with one child, whom he had in charge, and to whom he was a devoted father. He had worked for the telephone company for three or four years at a salary of $135 a month, and in the spring of 1921 obtained employment with the city of Ponca City to work at its electric light and power plant at a salary of $140 per month. He had studied somewhat the theory of applied electricity and desired to be an electrician, but had only had two or three months' actual experience in the practical work of producing and distributing electricity, which was the time he was in the employ of the city. On July 6, 1921, P. R. Dunton, the superintendent of the city's electric works, and Harold Stockton, an apprentice electrician, employed as a helper to Roy A. Reed, were working at the power plant, and the superintendent directed Reed to go upon the roof and repair some light wires extended over the roof and south wall of the power plant. The wires, from 13 to 18, carrying the electricity, came out of the tower, extended across the south part of the roof of the building, and on to the crossbars attached to a pole about 125 feet from the building. Some of the wires were only a short distance, about two feet, above the roof, and others were 18 to 20 inches above these, and still others a short distance higher, and the highest about six feet above the roof, and they were about 20 inches to two feet apart. some of them carrying 2,300 volts of electricity, others carrying less. Some of these high voltage wires were "hot." that is, were carrying electricity at the time the decedent went upon the roof to make the re-

pairs, and some of these hot wires were near where he was to work. The helper was not ordered to go with him and did not go with him, but remained on the ground to assist the superintendent. Deceased was not furnished a rubber mat or blanket to stand on, nor rubber gloves for his hands, and the roof where he was to work was wet from an exhaust pipe attached to the machinery below. While Reed was at his work he came in contact with a wire carrying 2,300 volts of electricity, and was seen grasping it with his hands and struggling against the shock, and when released was found to be electrocuted.

This action was brought for $50,000 damages for the benefit of his child. Plaintiff's theory was that it was the duty of the defendant to furnish the deceased a reasonably safe place to work and reasonably safe appliances with which to work, and this it failed to do, in the manner in which the electric wires were placed on the roof, and in not furnishing him a rubber mat or blanket for his feet and rubber gloves for his hands, the same being the proximate cause of his death. Defendant denied the acts of negligence, and pleaded contributory negligence. The cause was tried to a jury at the April, 1924, term of court in June and resulted in a verdict and judgment in favor of plaintiff in the sum of $20,000, and defendant has appealed, alleging error and asking for a reversal on four grounds. The first is that "the trial court committed error in allowing the plaintiff to introduce in evidence for consideration of the jury 'Exhibit A' and 'Exhibit B', for the reason that 'Exhibit A,' which is the basis for 'Exhibit B,' was unconstitutional, void, and inoperative." "Exhibit A." was a city ordinance adopting the National Electric Code in the distribution and use of electricity in the city and was as follows:

"Section 1. The National Electric Code, the same being a regulation of the National Board of Fire Underwriters for electric wiring and apparatus. as recommended by the National Fire Protection Association, published in a single volume for the year 1920, is here referred to and hereby adopted and enacted in its entirety.

"Section 2. All electrical wiring of every kind, nature and character, shall be done, and all electrical machinery. appliances, devices. and apparatus shall be installed, operated. and maintained. according to and in compliance with the several requirements. provisions and specifications relative and applicable thereto, contained in said volume.

"Section 3. The printed volume of said

'Code' shall be presumptive evidence of the contents and requirements, provisions and specifications thereof, and as such shall be received in evidence in all cases, courts and places.

"Section 4. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not to exceed $100.

"Section 5. All ordinances and each part of every ordinance in conflict herewith are hereby repealed."

And "Exhibit B," which is part of the Code adopted in "Exhibit A," is as follows:

"C. Wires must be at least eight feet from the nearest point of buildings over which they pass, and if attached to roofs the roof structures must be substantially constructed. Wherever feasible, wires crossing over buildings should be supported on structures which are independent of the buildings."

1. The first reason defendant gives for its contention is that the ordinance was unconstitutional, inoperative, and void, and, therefore, incompetent, and the right to introduce the provisions of the electric code, "Exhibit B," being based on the right to introduce the ordinance, the code was also incompetent. The case of Ex parte Daugherty (Okla. Cr.) 204 Pac. 937, is cited in support of this contention. This was a case to enforce an ordinance defining a crime which was greater than a "petty offense," and which was already defined by the Legislature of the state, and the ordinance was held to be unconstitutional and unenforceable. But this case is not applicable to the contention here, because the ordinance in question was not enacted to define an offense, but to establish rules regulating the city's electric light and power business under section 4576, Comp. St. 1921. The penalty fixed for violating the provisions of the ordinance, being for more than a petty offense, would be unenforceable, but this did not render the ordinance invalid for the purpose for which it was enacted, since its provisions (without the penalty) were within the authority given by the state law. It must be observed that the ordinances of a municipal corporation may be classified as civil and criminal as they define the rules and regulations of the business or the "petty offenses" of the municipality. The ordinance in question comes under the first class and was introduced to show that the city had declared rules of safety for its inhabitants in general in the matter of placing electric wires in the conducting and distribution of electricity for light and power, and for the further purpose of showing that it had failed to comply with these rules at the place where the deceased, Reed, was required to work and where he lost his life from an electric wire. We do not think the contention of defendant on this point is tenable.

2. Defendant's second proposition is that the ordinance was not competent as evidence because not pleaded. This objection is answered adversely to defendant's contention by C., R. I. & P. Ry. Co. v. Martin, 42 Okla. 353, 141 Pac. 276; C., R. I. & P. Ry. Co. v. Austin, 63 Okla. 169, 163 Pac. 517; and Thompson's Law on Negligence, vol. 6, par. 7868, where it is held that an ordinance is admissible in evidence where the evidence tends to show that its violation was negligence and contributed to the injury complained of, whether pleaded or not. We must, therefore, hold that the court committed no error in allowing plaintiff to introduce "Exhibit A" and "Exhibit B" as evidence in the case tending to show negligence on the part of the defendant.

3. Defendant's next contention is that the court committed error in admitting evidence showing a change in the conditions of the premises after the accident. This complaint is based upon the evidence given by J. W. Crow, witness for defendant, on cross-examination. This witness was employed as superintendent of the electric light station in November after the accident, and he testified on direct examination as to the conditions he found at the time he took charge of the plant, and stated on direct examination that the wires comming out of the "doghouse," the tower, "could have been made safer, and could have been in a worse condition." On cross-examination he was asked and answered as follows:

"Q. You say that the conditions there around the dog-house could have been worse when you came there? A. Yes, could have been worse. Q. Not very much, could it? A. It was in pretty bad shape. Q. Yes, it was? A. Yes, sir. Q. Yes, and you kind of cleaned it up. A. Yes, sir, I changed all of it. Mr. Jacobson: Objected to as incompetent, irrelevant and immaterial. Mr. Weick: I submit that is proper cross-examination. The Court: I believe you brought that out. Mr. Jacobson: I merely asked about the system there. Mr. Weick: And about it being a safe place. The Court: About that it could have been better or worse. Exception."

This evidence did not bring out any particulars as to the changes made after the accident. The witness stated that he changed it all, but he did not say in what particular or particulars he changed the conditions he

mentioned in his direct examination as "could have been better and could have been worse." His testimony did not go as far as defendant went in showing the changed conditions. It appears from the record that it introduced a plat or drawing made by an engineer showing the bolts and places where the wires were located at the time of the accident and where they were located after certain changes were made. This plat showed the changes and was explained to the court and jury by the witnesses for defendant, and the same was introduced as evidence for the consideration of the jury, and, in view of the direct examination of the witness Crow, as above indicated, and the extent of the evidence on the part of the defendant in introducing the plat showing changes that were made, we cannot see where the testimony complained of resulted in any injury to the defendant. It will be further observed that the defendant made no objection to the evidence complained of until after the questions were asked and the answers given, and it contented itself by taking exception without asking the court to strike the testimony from the consideration of the jury. The rule is:

"Though a question propounded to a witness be objectionable, opposing counsel cannot complain of the prejudicial effect thereof, where no objection was made until after the answer was given, and where no request was made to exclude the testimony from the consideration of the jury." St. Louis & S. F. Ry. Co. v. Davis, 37 Okla. 340, 132 Pac. 337.

4. Defendant's fourth contention is that the damages awarded are excessive. We recognize the rule pointed out by defendant that requires the damages awarded to be based upon pecuniary loss to the beneficiary and not upon the life expectancy of the deceased. City of Sapulpa v. Deason, 81 Okla. 58, 196 Pac. 544. Also the rule pointed out by plaintiff to the effect that damages in a case of children are not limited to minority, but may extend to pecuniary loss shown to be probable after majority. Gypsy Oil Corporation v. Green, 82 Okla. 147, 198 Pac. 851. We do not find anything in the record showing that these rules were violated by the judgment in this case. The rule as to excessive damages binding upon this court is as follows:

"Where it clearly appears that the jury has committed some palpable error or acted upon some improper bias, influence, or prejudice, or has clearly mistaken the rules of law by which damages are to be regulated. the verdict can be set aside. St. Louis & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60; Slick Oil Co. v. Coffey, 72 Okla. 32, 177 Pac. 915. And where a verdict is excessive

for any of the reasons cited, the Supreme Court may direct a reversal of the cause or give the plaintiff the option to remit the amount held to be excessive and allow the judgment as modified to stand. St. Louis & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436; M., O. & G. R. Co. v. Parker, 50 Okla. 491, 151 Pac. 325; St. Louis & S. F. R. Co. v. Hodge, supra; Slick Oil Co. v. Coffey, supra" City of Sapulpa v. Deason, 81 Okla. 51, 196 Pac. 544; City of Tulsa v. Wells, 71 Okla. 39, 191 Pac. 186.

Applying the rule to the facts disclosed by the record, in the instant case, we cannot see where the jury acted arbitrarily or from passion or prejudice, and we cannot see that the verdict of $20,000 is excessive.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 29 Cyc. p. 436 (Anno). (2) 29 Cyc. p. 568. (3) 3 C. J. 817, § 731. (4) 4 C. J. p. 872, § 2847.