## OKLAHOMA TRANSPORTATION CO. v. MARTIN, Adm'r.

No. 28260.    May 23, 1939.

Rehearing Denied June 13, 1939.

George F. Short, Welcome D. Pierson, Max G. Morgan, W. W. Pryor, and Hugh Sandlin, for plaintiff in error.

Anglin & Stevenson and O. S. Huser, for defendant in error.

OSBORN, J. This action was instituted in the district court of Hughes county by Joel Martin, as administrator of the estate of Clyde Broaddus, deceased, as an action for damages for the wrongful death of the deceased which occurred when a bus operated by the defendant, Oklahoma Transportation Company, collided with a truck in which the deceased was riding. The parties will be referred to in the order of their appearance in the trial court. The principal question presented is whether or not the verdict is excessive.

Deceased was 27 years of age; was survived by his wife, aged 26, and two children aged five and three at the time of the trial. It was stipulated that deceased had a life expectancy of 37.43 years. The verdict of the jury was for $30,639.50.

We will briefly review the evidence relating to the earning capacity of deceased. Mrs. Clyde Broaddus, widow of the deceased. testified that when they were married on November 27, 1929, deceased was working for his father, J. L. Broaddus, at a garage in Holdenville and that his wages were "around $25 a week"; that his father sold the garage and deceased went to work for a bakery in Holdenville and worked there a year or more; that his wages were "$25 a week"; that deceased went to California and stayed about six months. The record does not show how long he was employed in California nor what the wages were, but the witness testified that deceased came back to East Texas, where he worked for the Marathon Oil Company as a royalty gauger; that his wages were "$125 a month"; that he worked for them about nine months and then secured a job switching a lease and that his wages were $5 per day; that he then went to work for a construction company at Gladewater, Tex.; that he received "a weekly wage around from $22 to $25 a week"; that he came to Oklahoma with said company. The witness stated that deceased sent her most of his earnings. The witness testified further that the health of deceased was good, and that at no time during their married life was he incapacitated or unable to work.

Ray Brame testified that he employed deceased during the years 1931 and 1932 for approximately eight months; that he started out at $20.50 a week, and when the employment was discontinued deceased's wages were $25 or $26 a week; that deceased showed improvement on the job during the time he worked for the witness.

H. D. Howard, a building contractor, testified that deceased worked for him in East Texas in 1934 about five months and worked for the witness in Ada in 1935 on a job contracted by the witness; that he was a carpenter's helper in Texas and drew 40 cents an hour and in Ada 50 cents an hour and worked eight hours a day; that his work showed improvement during the time he worked for the witness, indicated by his increase in wages.

J. W. Brittain testified that he was a building contractor and that deceased had worked for him in 1935 for three or four months; that he was paid 40 cents an hour; that he started as a common laborer and was advanced some; that he worked eight hours a day.

Jim Broaddus, father of the deceased, testified that deceased worked for him "in the bakery job about three years"; that he (witness) sold the bakery and went into the garage business and deceased worked for him in the garage a year and a half or until he sold out; that the average weekly wage of the deceased during that time was $25 per week.

It is agreed by all the parties that the measure of damages in this case is the pecuniary loss suffered by reason of the death of deceased; and that no other elements may be considered.

Considerable emphasis is placed upon the opinion of the court in the case of New v. McMillan, 79 Okla. 70, 191 P. 160, wherein a verdict was reduced from the sum of $21,780 to the sum of $14,520. In that case it was pointed out that deceased was

a man 33 to 37 years of age, uneducated, unskilled and not qualified for any other work than manual labor; that his earnings were $55 per month or $666 per year. It was pointed out that the amount of the verdict invested at 6, 8, or 10 per cent. per annum would earn an amount greatly in excess of the annual earnings of the deceased. We do not understand that it was the intention of the court then to adopt such a rule for measuring the verdict in a case similar to that involved here for the reason that the investment of the amount of the recovery authorized by the court at the rates of interest found by the court to be generally prevailing at that time would exceed the earnings of the deceased, to wit, $666 per annum. We may take judicial notice of the fact that such rates of interest are not now available to investors who desire to make safe investments. Instead of 6, 8, and 10 per cent., investors are now required to accept from 2 to 4 per cent. upon nonspeculative investments. It is the general rule that not only the increased cost of living but the impaired purchasing power of money may be considered in determining the amount of damages which should be awarded for personal injuries. Annotation 60 A. L. R. 1935.

As often said by this court, there is no fixed rule for computation of a recovery in cases of this character and each case stands more or less upon its own facts. It may be helpful, however, to refer to various other cases solely for the purpose of comparison.

In the case of City of Sapulpa v. Deason, 81 Okla. 51, 196 P. 544, by remittitur, a recovery was reduced to $15,000. In that case the deceased was 40 years of age, had an earning power of $20 per week, a life expectancy of 28 years, and had a family consisting of a wife and four children. Deceased in that case was 13 years older than deceased in the instant case, and his salary was less than the average wages earned by deceased in the instant case.

In the case of M., K. & T. Ry. Co. v. Herron, 176 Okla. 162, 55 P.2d 95, deceased was a 62-year-old switchman with an earning capacity of approximately $2,500 per year with probably eight more years of active service. The jury rendered a verdict for $20,000, but the trial court ordered a remittitur of $5,000, reducing the judgment to $15,000, and the recovery was approved by this court.

In the case of Fike v. Peters, 175 Okla. 334, 52 P.2d 700, the deceased was a 14-year-old daughter of the plaintiffs. Judgment was rendered for $10,000 actual damages and $2,500 for pain and suffering. The recovery was approved by this court.

In the instant case it was stipulated that deceased had a life expectancy of 37.43 years. The evidence discloses that he was in good health. Although he was not continuously employed for several years prior to his death, it is shown that he was able to earn, when employed, approximately $100 per month. The jury was entitled to presume that the major portion of his earnings would have been devoted to the support of his family. The jury should have taken into consideration the fact that some income would have been produced by investing the amount of the judgment.

In view of the various elements involved herein, it is clear that the verdict of the jury is excessive. We do not find it necessary, however, to reverse the cause for this reason. We are of the opinion that $20,000 would be a fair recovery in this case, and that the ends of justice would be subserved by ordering a remittitur of all of the judgment in excess of said amount.

Defendant's contention that the verdict is not supported by the evidence and is contrary to law is without merit.

Accordingly, the cause is remanded, with directions to permit plaintiff to file a remittitur of all of the judgment herein in excess of the sum of $20,000 within 20 days from receipt of the mandate, or, upon failure thereof, to grant defendant a new trial.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, HURST, DAVISON, and DANNER, JJ., concur. GIBSON, J., dissents.